1
2
3
4
5
6
7
8
9
10          **UNITED STATES DISTRICT COURT**

11          **SOUTHERN DISTRICT OF CALIFORNIA**

12

13   MANUEL P. ESCAMILLA,                    Case No. 17-cv-01621-BAS-JMA

14                          Plaintiff,        **ORDER:**

15         v.                                 **(1) GRANTING PLAINTIFF'S
                                                  MOTION FOR SUMMARY
16   NANCY A. BERRYHILL, Acting                   JUDGMENT (ECF No. 10);**
     Commissioner of the Social Security
17   Administration,                          **(2) DENYING DEFENDANT'S
                                                  MOTION FOR SUMMARY
18                          Defendant.            JUDGMENT (ECF No. 11);
                                                  AND**
19
                                              **(3) REMANDING ACTION FOR
20                                                FURTHER PROCEEDINGS**

21

22

23         Plaintiff Manuel Escamilla seeks judicial review of a final decision by the

24   Acting Commissioner of the Social Security Administration ("Commissioner")

25   denying his application for disability insurance benefits under Title II of the Social

26   Security Act ("the Act"), 42 U.S.C. §§ 401-433.  The Court has jurisdiction to review

27   the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

28

The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons that follow, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 10) and **DENIES** the Commissioner's Cross-Motion for Summary Judgment (ECF No. 11).

## I.     BACKGROUND

### A.     Plaintiff's Condition

Escamilla alleges he became disabled on February 2, 2009, at which point he was 46 years old. (Administrative Record ("AR") 186-87, ECF No. 8.)  Previously, Escamilla worked as a welder-mechanic. (AR 69.)  On October 10, 2003, Escamilla suffered an industrial injury to the head, neck, right upper extremity, right lower extremity, and back. (AR 282.)  He was underneath a truck inspecting it when the truck rolled over him and dragged him about 35 yards.  Escamilla's right lower extremity was "crushed and torn" through to the bone. (*Id.*)  He was eventually able to return to work after recovering from the injury. (AR 283.)  Escamilla stopped working on February 2, 2009, because of a work-related injury in which he was "thrown to the ground" and landed on his right side. (*Id.*)  He sustained injuries to his back, neck, and right lower extremity and significant damage to his right rotator cuff. (AR 283-84.)

The administrative record and evidence presented demonstrate Escamilla's physical and mental health impairments.  Escamilla alleged disability due to shoulder injuries, hip injuries, and a "psychological injury." (AR 90.)  Escamilla suffers from limited range of motion in the left shoulder, mild bilateral foraminal narrowing, mild spinal stenosis, mild narrowing of the central canal, posttraumatic stress disorder, anxiety, depression, and a major neurocognitive disorder. (AR 30-33.)  Escamilla further alleges that he suffers from chronic pain in his knees, hip, and back, but medical professionals have been unable to determine its root cause. (AR 30-34.)

Escamilla takes medication for pain, headaches, depression, and urination, including Oxycodone, Trazodone, and Cyclobenzaprine. (AR 551, 1318.) Escamilla has been receiving mental health treatment since 2012 from Dr. Noordeloos for a major depressive disorder, posttraumatic stress disorder, pain disorder, and anxiety. (AR 868.)

### B.    Procedural History

On August 24, 2012, Escamilla filed an application for a period of disability and disability insurance benefits, alleging disability commencing on February 2, 2009. (AR 186-88.) The claim was denied on initial review on January 24, 2014, and on reconsideration on June 23, 2014. (AR 129-34.) Escamilla then requested a de novo hearing before an Administrative Law Judge ("ALJ") on July 10, 2014. ALJ Donald P. Cole heard the case and determined Escamilla was not disabled as defined under the Act. (AR 22-47.) Escamilla requested an Appeals Council review, but was denied on June 13, 2017. (AR 1-7.) Escamilla now seeks judicial review under 42 U.S.C. § 405(g) of the ALJ's decision for substantial evidence and error of law.

## II.    LEGAL STANDARD

Under 42 U.S.C. § 405(g), an applicant for Social Security disability benefits may seek judicial review of a final decision of the Commissioner in federal district court. "As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Federal courts will uphold the Commissioner's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

In reviewing whether the Commissioner's decision is supported by substantial evidence, the court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter*, 504 F.3d at 1035 (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation omitted). The court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which" the ALJ "did not rely." *Garrison*, 759 F.3d at 1010 (citation omitted).

## III.   THE ADMINISTRATIVE DECISION

### A.   Standard for Determining Disability

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act's implementing regulations, the Commissioner applies a five-step sequential evaluation process to determine whether an applicant for benefits qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[1] 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. If not, the ALJ proceeds to step two.

At step two, the ALJ must determine whether the claimant has a severe medical impairment, or combination of impairments, that meets the duration requirement in

---

[1] "Substantial gainful activity is work activity that (1) involves significant physical or mental duties and (2) is performed for pay or profit." 20 C.F.R. § 404.1510.

the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant's impairment or combination of impairments is not severe, or does not meet the duration requirement, the claimant is not disabled. If the impairment is severe, the analysis proceeds to step three.

At step three, the ALJ must determine whether the severity of the claimant's impairment or combination of impairments meets or medically equals the severity of an impairment listed in the Act's implementing regulations.[2] 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. If not, the analysis proceeds to step four.

At step four, the ALJ must determine whether the claimant's residual functional capacity ("RFC")—that is, the most he can do despite his physical and mental limitations—is sufficient for the claimant to perform his past relevant work. 20 C.F.R § 404.1520(a)(4)(iv). The ALJ assesses the RFC based on all relevant evidence in the record. *Id.* § 416.945(a)(1), (a)(3). If the claimant can perform his past relevant work, he is not disabled. If not, the analysis proceeds to the fifth and final step.

At step five, the Commissioner bears the burden of proving that the claimant can perform other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1), (c)(2); *see also* 20 C.F.R. § 404.1520(g)(1). The ALJ usually meets this burden through the testimony of a vocational expert, who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (citations omitted). If the claimant is able to perform other available work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

---

[2] The relevant impairments are listed at 20 C.F.R. part 404, subpart P, appendix 1.

## B. The ALJ's Disability Determination

On January 5, 2016, the ALJ issued a written decision concluding that Escamilla was not disabled within the meaning of the Act. At step one, the ALJ found that Escamilla had not engaged in substantial gainful activity since February 2, 2009, the alleged onset date of disability. (AR 28.) At step two, the ALJ found that Escamilla had the following severe impairments: post rotator cuff tear, posttraumatic stress disorder, affective depression disorder, affective anxiety disorder, major neurocognitive disorder due to traumatic brain injury, and obesity. (*Id.*) At step three, the ALJ determined that Escamilla's impairments, alone and in combination, did not meet or medically equal the severity of impairments listed in the regulations. (*Id.*)

At step four, the ALJ assessed that Escamilla had the RFC to perform "light work" as defined in the Social Security regulations, with the following limitations: only frequent climbing of stairs and ramps; only frequent balancing, stopping, kneeling, crouching, and crawling; no climbing of scaffolds, ladders, and ropes; no overhead reaching, bilaterally; only understanding and remembering simple, routine, repetitive tasks with regular industry breaks every two hours; and no interaction with the public and no more than occasional work-related, non-personal, non-social interaction with coworkers and supervisors. (AR 29.)

In determining the above RFC, the ALJ considered medical evidence, medical opinions, third party statements, and Escamilla's testimony about his symptoms. (AR 30.) The ALJ applied the required two-step process to determine the credibility of Escamilla's statements about his symptoms. First, the ALJ concluded that Escamilla's medical impairments could reasonably be expected to cause the alleged symptoms. (AR 33.) Second, the ALJ evaluated the intensity, persistence, and limiting effects of these symptoms. (*Id.*) The ALJ determined that the claimant's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*Id.*)

– 6 –

Finally, at step five, the ALJ called upon a vocational expert to testify as to what jobs Escamilla could perform given his RFC, age, education, work experience, and the availability of suitable jobs in the national economy. (AR 30.) The vocational expert testified that Escamilla could perform light exertional activity as an inspector and hand packager or a bench assembler. (AR 40.) Based on the vocational expert's testimony, the ALJ determined that Escamilla was capable of making "a successful adjustment to other work," and therefore was not disabled under the meaning of the Act. (*Id.*)

In reaching this decision, the ALJ found that the "bulk of the evidence" illustrates that Escamilla was able to perform a variety of daily activities and that he "demonstrated no deficits with regard to general orientation, was consistently cognitively intact and exhibited a thought process that was consistently coherent and organized." (AR 37.) Thus, the ALJ gave little to no weight to portions of the opinions of one treating physician, Dr. Noordeloos, and two examining physicians, Dr. Vandenburgh and Dr. Davidson, all of whom found significant limitations in Escamilla's capacity to work. (AR 913-14, 1233-35, 1324-25.) Instead, the ALJ gave "significant weight" to the opinions of Dr. Rodriguez, Dr. Alvarez, Dr. Addario, and Dr. Phillips and only certain portions of the opinions of Dr. Noordeloss, Dr. Vandenburgh, and Dr. Davidson. The ALJ also discredited Escamilla's testimony regarding the severity of his symptoms. (AR 34-35.) He found that factors such as the radiological and medical diagnostic tests, the findings of certain mental health professionals, and Escamilla's ability to carry out daily activities rendered his testimony "not entirely credible." (AR 33.)

## IV. DISCUSSION

Escamilla challenges the ALJ's decision on two grounds. First, he argues the ALJ erred in failing to articulate specific and legitimate reasons for rejecting the opinions of Dr. Noordeloos, Dr. Vandenburgh, and Dr. Davidson. Second, he claims

the ALJ erred in accepting the opinion of Dr. Goldstein without specifically stating which opinion expressed by Dr. Goldstein was accepted.

### A. Rejection of Opinions of Mental Health Physicians

### 1. Legal Standard for Physicians' Opinions

The Act's implementing regulations distinguish among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). As a general rule, the opinion of a treating doctor is entitled to greater weight than the opinion of doctors who do not treat the claimant. *Lester*, 81 F.3d at 830 (citation omitted). "The rationale for giving greater weight to a treating physician's opinion is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation omitted).

The degree of deference afforded to a treating doctor's opinion depends partly upon whether, and to what extent, that opinion is contradicted. An opinion by a treating doctor is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Such opinions may be rejected "only for 'clear and convincing' reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (quoting *Lester*, 81 F.3d at 830). In cases where a treating doctor's opinion is contradicted by another doctor's, an ALJ may reject the treating doctor's opinion only with "specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198). An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

findings." *Id.* (quoting *Reddick*, 157 F.3d at 725). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

While an examining physician is not entitled to the same degree of deference as a treating physician, the ALJ may not simply reject an examining physician's opinion. Rather, the opinions of examining physicians, even if contradicted by another doctor, "can only be rejected for specific and legitimate reasons that are supported by substantial evidence." *Lester*, 81 F.3d at 830-831.

### 2.    Opinion of Mental Health Treating Physician, Dr. Noordeloos

Escamilla contends that the ALJ improperly discredited the findings of his mental health treating physician, Dr. Noordeloos. Dr. Noordeloos treated Escamilla over the period of January 2012 through September 2015. (AR 1094-1203.) Upon initial intake, Dr. Noordeloos diagnosed the presence of a major depressive disorder, posttraumatic stress disorder, and a pain disorder. (AR 1098.) Dr. Noordeloos further concluded that Escamilla's comprehension was "fully intact," attention and concentration were adequate, memory was adequate, and thinking was "logical, linear, and sequential." (AR 1097.) In treatment notes, Dr. Noordeloos stated that Escamilla experiences short term memory impairments, cognitive difficulties, and concentration difficulties. (AR 1115, 1135, 1139.)

Several years later, in his mental impairment assessment of Escamilla from March 2014, Dr. Noordeloos described Escamilla as unable to meet competitive standards for remembering work-like procedures, accepting instructions, and responding appropriately to workplace changes. (AR 1076-77.) Dr. Noordeloos also described Escamilla as incapable of maintaining attention and concentration for two hour segments and of completing a normal workday and workweek without interruptions from psychologically-based symptoms. (*Id.*) Finally, Dr. Noordeloos stated that "concentration and memory impairments coupled with anxiety episodes"

would prevent Escamilla from being able to perform sustained work activity. (AR 1077.)

Dr. Noordeloos again completed a mental impairment assessment in October 2015. (AR 1233-35.)  It states that Escamilla was still unable to meet competitive standards for maintaining attention and concentration for two hour segments and to complete a normal workday or workweek without interruptions from psychologically-based symptoms. (AR 1234-35.)  Dr. Noordeloos explained that due to concentration problems and short-term memory loss, Escamilla would become anxious and overwhelmed by working a regular job on a sustained basis. (AR 1235.)  Further, Dr. Noordeloos indicated that because of Escamilla's impairments he would miss at least four days of work per month. (*Id.*)

Nevertheless, the ALJ gave little weight to most of Dr. Noordeloos's findings and medical conclusions. (AR 37.)  The ALJ credited the findings that Escamilla's comprehension was fully intact, attention and concentration were adequate, and thinking was logical, linear, and sequential. (AR 35.)  The ALJ gave little weight to all other opinions of Dr. Noordeloos because the conclusions were "not consistent with the bulk of the evidence," which the ALJ characterized as showing Escamilla could perform a variety of daily activities and demonstrated no deficits with regard to general orientation, cognition that was consistently intact, and a thought process that was consistently coherent and organized. (AR 37.)  Further, the ALJ concluded that Dr. Noordeloos's treatment notes illustrating that Escamilla was gradually improving and "able to process his moods better" fail to support Dr. Noordeloos's finding that Escamilla is limited from work. (AR 35.)

The Court finds that the ALJ did not provide specific and legitimate reasons supported by substantial evidence to reject Dr. Noordeloos's opinion regarding Escamilla's mental limitations.  First, the ALJ reasons that Dr. Noordeloos's opinion is not consistent with the evidence in the record that shows Escamilla could perform a variety of daily activities. (AR 37.)  These activities included chores like "picking

up around the house," laundry, and "watching workers in his backyard." (AR 30.) The ALJ's suggestion that Escamilla's ability to carry out certain daily activities undermines Dr. Noordeloos's opinion is unconvincing. The demands of daily living and of a competitive work environment are not facially analogous. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Only where a claimant's level of daily activity is inconsistent with the limitations alleged can those activities be treated as evidence of an ability to work. *See Reddick*, 157 F.3d at 722 (explaining that a claimant's daily activities are only relevant to an ability to work when the level of activity is inconsistent with the alleged limitations).

Such is not the case here. The daily activities cited by the ALJ are largely irrelevant to competitive work. Further, the ALJ does not address what he determines to be the connection between Escamilla's daily activities and his ability to work. Thus, Escamilla's ability to perform certain daily activities is not a legally sufficient reason to reject Dr. Noordeloos's opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (finding that a claimant's limited daily activities, including performing basic chores and occasionally socializing, were not in tension with treating providers' opinion that claimant's depression made it unlikely he would be able to engage in meaningful employment in the near future).

Second, the ALJ rejected most of Dr. Noordeloos's opinion because it was not consistent with the "bulk of the evidence." (AR 37.) In considering Escamilla's mental health, the ALJ interpreted the "bulk of the evidence" as demonstrating Escamilla had "no deficits with regard to general orientation, was consistently cognitively intact, and exhibited a thought process that was consistently coherent and organized." (*Id.*)

This rationale is erroneous for two reasons. Initially, the ALJ's description of the "bulk of the evidence" is inaccurate. An ALJ cannot ignore contrary evidence in

the record when coming to his conclusion. *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (per curiam); *see also Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Here, the ALJ's description of the "bulk of the evidence" ignores several doctors' additional findings that Escamilla suffers from concentration and memory deficiencies. For instance, the ALJ cites examining physician Dr. Phillip's opinion as evidence that Escamilla was cognitively intact. (AR 32.) But the ALJ does not acknowledge the fact that Dr. Phillips also indicated that Escamilla has memory loss, concentration difficulties, and trouble thinking clearly. Similarly, the ALJ afforded great weight to examining physician Dr. Alvarez's opinion, yet he failed to address Dr. Alvarez's conclusion that Escamilla was "temporarily partially disabled from a psychological prospective." (AR 300.) Two other examining physicians, who are discussed below, also found Escamilla would be limited in the workplace due to difficulty concentrating. In short, the ALJ paints an incomplete picture of the record when he summarizes the "bulk of the evidence" as demonstrating Escamilla is "cognitively intact" and "coherent," but fails to address Escamilla's concentration difficulties and memory loss symptoms.

In addition, the ALJ compounds this error by using this incomplete description of the record to discount Dr. Noordeloos's opinion. Not only is this description inaccurate, but the ALJ fails to explain how it contradicts the portions of Dr. Noordeloos's opinion he rejects. *See Reddick*, 157 F.3d at 725 (requiring the ALJ to "do more than offer his conclusions" by "set[ting] forth his own interpretations and explain[ing] why they, rather than the doctors', are correct"). On its face, that Escamilla is "cognitively intact" or "coherent" is not a sufficient basis for rejecting Dr. Noordeloos's separate, additional finding that Escamilla's anxiety episodes, concentration issues, and memory impairments would prevent his completion of a full workday without interruptions. Accordingly, the ALJ's determination that Dr.

Noordeloos's findings are contrary to the "bulk of the evidence" is not a specific and legitimate reason supported by substantial evidence to reject his opinion.

In sum, the ALJ erred in rejecting Dr. Noordeloos's opinion because he did not provide legally sufficient reasons for rejecting the treating physician's conclusions. *See Garrison*, 759 F.3d at 1012.

### 3.    Opinions of Mental Health Examining Physicians

Escamilla also argues that the ALJ committed legal error by improperly affording no weight to certain examining physicians. Escamilla was evaluated by a number of examining physicians, and he argues that the ALJ wrongfully rejected two of these examining physicians' opinions. As stated above, the opinions of examining physicians "can only be rejected for specific and legitimate reasons that are supported by substantial evidence." *Lester*, 81 F.3d at 830-831.

Dr. Vandenburgh psychologically evaluated Escamilla in October 2013, which included a mental status examination. (AR 908.) Dr. Vandenburgh diagnosed Escamilla with a cognitive disorder, mood disorder, and psychosocial stressors of chronic pain. (AR 914.) In her report, Dr. Vandenburgh further stated that Escamilla needed to have directions repeated to understand them, had difficulty sustaining an ordinary routine without supervision, had an inability to complete simple tasks, had limitations in completing detailed tasks, and had moderate limitations in his ability to maintain attention and concentration for two hour segments. (AR 913-14.) The ALJ gave great weight to Dr. Vandenburgh's finding that Escamilla had no limitations in his ability to interact socially with others and his ability to understand instructions. (AR 913.) The ALJ, however, gave little weight to most of Dr. Vandenburgh's opinion. The ALJ stated that the limitations as described above were given little weight because the evidence shows that Escamilla is not as limited as detailed by Dr. Vandenburgh. More specifically, the ALJ references Escamilla's ability to perform daily living activities and the "bulk of the evidence" as reasons for giving Dr. Vandenburgh's opinion little weight. (AR 37.)

In October 2015, Escamilla submitted to a neuropsychological evaluation by Dr. Davidson. (AR 1315-26.) The ALJ gave very little weight to the opinion of Dr. Davidson. The ALJ summarized Dr. Davidson's findings as indicating an IQ of 75—meaning Escamilla falls within the borderline range—and a diagnosis of posttraumatic stress disorder, major depressive disorder, and a major neurocognitive disorder. (AR 1322, 1324-25.) The ALJ did not mention or credit the remainder of Dr. Davidson's findings because the ALJ stated they were contrary to the "bulk of the evidence." (AR 37.) The ALJ did not, however, specifically address or refute Dr. Davidson's findings that Escamilla suffered from significant deficits in all areas of memory skills, cognitive interference, inattention, and borderline intellectual functioning. (AR 1325.) Further, the ALJ simply dismissed Dr. Davidson's GAF score assignment of 45 on the grounds that it "is not consistent with" the evidence that shows Escamilla "is able to perform a variety of activities of daily living." (AR 38.)

The Court finds that the ALJ did not provide specific and legitimate reasons supported by substantial evidence to reject the opinions of Dr. Vandenburgh and Dr. Davidson. First, the ALJ reasons that Dr. Vandenburgh's and Dr. Davidson's opinions are not consistent with the "bulk of the evidence in the record" that shows Escamilla could perform various daily activities. (AR 37.) As mentioned, these activities included chores like "picking up around the house," laundry, and "watching workers in his backyard." (AR 30.) Yet, similar to his criticism of Dr. Noordeloos's opinion, the ALJ's suggestion that Escamilla's ability to carry out certain daily activities undermines Dr. Vandenburgh's and Dr. Davidson's opinions is unconvincing. *See Fair*, 885 F.2d at 603; *see also Reddick*, 157 F.3d at 722. Thus, Escamilla's ability to perform certain daily activities is not a legally sufficient reason to reject either Dr. Vandenburgh's or Dr. Davidson's opinion. *See Ghanim*, 763 F.3d at 1161.

Second, also like before, the ALJ adopts an incomplete view of the record to support his conclusion that Dr. Vandenburgh's and Dr. Davidson's opinions are inconsistent with that record. As detailed above, the ALJ's description of the "bulk of the evidence" as simply providing Escamilla is "cognitively intact" and "coherent" is inaccurate. *See Denton*, 596 F.3d at 425 ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). And, like his treatment of Dr. Noordeloos's opinion, the ALJ uses this incomplete description of the evidence to discredit the opinions of Dr. Vandenburgh and Dr. Davidson.

But, for the same reasons addressed above, there is no apparent inconsistency between the ALJ's description of the "bulk of the evidence" and Dr. Vandenburgh's opinion that Escamilla has limited abilities to sustain an ordinary routine, difficulty completing simple tasks because of memory impairments, and limited abilities to complete tasks. (AR 914.) Similarly, there is not a sufficient basis for asserting an inconsistency between the "bulk of the evidence" and Dr. Davidson's opinion that Escamilla demonstrated "significant deficits in all areas of memory skills" and had an "inability to be successful in social, educational, occupational, financial or other important areas of functioning." (AR 1323, 1325.)

Therefore, the ALJ's conclusion that Dr. Vandenburgh's and Dr. Davidson's findings are contrary to the "bulk of the evidence" is not a specific and legitimate reason supported by substantial evidence to reject their opinions. *See Garrison*, 759 F.3d at 1012. In sum, the ALJ erred in rejecting these opinions.

**B.      The ALJ's Assessment of Physical Impairments**

Escamilla argues that the ALJ did not explain "why, how, or whether" he accepted the limitations about Escamilla's left shoulder movement as expressed by Dr. Goldstein upon cross-examination. (Pl.'s Mot. Summ. J. 14:23-24.)  Dr. Goldstein originally testified that Escamilla's left shoulder movement was "reduced

to 90 degrees, which is shoulder height." (AR 59.)  Upon cross-examination, Dr. Goldstein stated that Escamilla could not "lift up to 90 degrees" with the left shoulder. (AR 63.)  Thus, Escamilla argues that the ALJ did not specify whether he accepted Dr. Goldstein's direct examination testimony or cross-examination testimony with respect to the left shoulder limitations. (Pl.'s Mot. Summ. J. 14:23-25.)

Dr. Goldstein's final conclusion upon cross-examination, however, was that Escamilla's left shoulder was limited to "90 degrees." (AR 63.)  Dr. Goldstein then repeated this conclusion five times during the remainder of his cross-examination. (AR 63-66.)  Therefore, substantial evidence supports the ALJ's conclusion that Escamilla cannot perform "overhead lifting or reaching with his left arm." (AR 59.)  Accordingly, the ALJ did not commit legal error in assessing Dr. Goldstein's testimony.

### C. Harmless Error Analysis

Having concluded that the ALJ erred in giving little weight to the opinion of treating physician Dr. Noordeloos and for failing to provide specific and legitimate reasons for rejecting the opinions of examining physicians Dr. Vandenburgh and Dr. Davidson, the Court must now determine whether such errors were harmless.  "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).  The court assesses whether an error is harmless by "look[ing] at the record as a whole to determine whether the error alters the outcome of the case." *Id.*

Here, the ALJ's errors were not harmless.  In rejecting the opinions of Escamilla's treating doctor and two examining doctors, the ALJ based Escamilla's RFC almost exclusively on the opinions of other examining physicians, Dr. Sabourin, Dr. Rodriguez, Dr. Addario, Dr. Alvarez, and Dr. Phillips, and the state's non-examining physician, Dr. Goldstein. (AR 30, 32, 34-37.)  These physicians found no

– 16 –

significantly disabling physical or mental limitations; thus, the ALJ's RFC determination overstated Escamilla's capacity to work. This RFC assessment distorted the determination of whether Escamilla could engage in alternative work in the national economy as an inspector and hand packager or bench assembler. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."). Consequently, the ALJ's errors impacted the disability determination. *See Molina*, 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d at 1162). Accordingly, the Court finds the ALJ committed harmful legal error.

## V.  APPROPRIATE REMEDY

Having concluded there is harmful legal error, the Court must determine the appropriate remedy. Escamilla urges the Court to reverse and award benefits. (Pl.'s Mot. Summ. J. 15: 11-12.) He contends that the record has been fully developed and that the Court should credit the opinions of Dr. Noordeloos, Dr. Vandenburgh, and Dr. Davidson as true, thus compelling a finding of disability under the meaning of the Act. (*Id.* 14:8-9.) The Court determines that remanding for further proceedings is the proper course.

"[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). This "ordinary remand rule" respects the Commissioner's role in developing the factual record, and helps guard against the displacement of administrative judgment by judicial decree. *See Treichler*, 775 F.3d at 1099-1100. When an ALJ makes a legal error, but there are ambiguities or outstanding issues in the record, the proper approach is to remand for further proceedings, not to apply the "credit as true" rule. *See id.* at 1105.

For this Court to depart from the ordinary remand rule and award benefits under the "credit as true" rule, three requirements must be met. *Garrison*, 759 F.3d at 1019-21. First, the court must determine that the ALJ committed legal error, such

as by failing to provide legally sufficient reasons for rejecting certain evidence. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Second, if the court finds such error, it must determine whether "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. In making this determination, the court reviews the record as a whole and asks whether there are conflicts, ambiguities, or gaps in the record such that essential factual issues have not been resolved. *Dominguez*, 808 F.3d at 407 (citation omitted). Where there are outstanding issues that require resolution, the proper approach is to remand the case to the agency for further proceedings. *See Treichler*, 775 F.3d at 1101, 1105.

If the court determines that the record has been fully developed and there are no outstanding issues left to be resolved, the court must next consider whether "the ALJ would be required to find the claimant disabled on remand" if the "improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (quoting *Garrison*, 759 F.3d at 1020). "If so, the district court may exercise its discretion to remand the case for an award of benefits." *Id.* However, even when the requirements of the credit as true rule are satisfied, district courts retain flexibility to remand for further proceedings when the record as a whole creates "serious doubt" as to whether the claimant is disabled. *Id.* at 1021. "The touchstone for an award of benefits is the existence of a disability, not the agency's legal error." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

Here, the first requirement is met because the ALJ failed to provide a legally sufficient basis to reject the medical opinions of Escamilla's treating physician, Dr. Noordeloos, and two of the examining physicians, Dr. Vandenburgh and Dr. Davidson. Second, the Court is satisfied that the record has been fully developed and that further administrative proceedings would serve no useful purpose. Further, neither Escamilla nor the Commissioner argues that additional proceedings would be necessary. Finally, the vocational expert already provided testimony based on

Escamilla's workplace limitations as derived from the opinion of Dr. Noordeloos. (AR 81.)

Third, the ALJ would be required to find Escamilla disabled on remand if Dr. Noordeloos's improperly discredited opinion was credited as true. Dr. Noordeloos determined that Escamilla would be required to miss more than four days of work per month due to his symptoms. When the vocational expert was asked if a hypothetical individual with this limitation could "perform any jobs," the expert testified that the individual "wouldn't be able to maintain the work." (AR 81.) Consequently, when Dr. Noordeloos's opinion is credited as true and considered in light of the vocational expert's testimony, the ALJ would be required to find Plaintiff disabled on remand. *See, e.g.*, *Henderson v. Berryhill*, 691 Fed. App'x 384, 386 (9th Cir. 2017) (reasoning that a vocational expert's testimony that a person with the claimant's impairments could not work "is a sufficient basis upon which to remand for determination of benefits"); *Behling v. Colvin*, 603 F. App'x 541, 544 (9th Cir. 2015) (noting where a vocational expert found limitations rendered the claimant disabled, but the ALJ improperly rejected the treating physician's opinion that supplied these limitations, "the ALJ would be required to make a finding that [the claimant] was disabled on remand" in "light of the vocational expert's testimony"); *Mongelluzzo v. Colvin*, 17 F. Supp. 3d 914, 931 (D. Ariz. 2014) (same).

Consequently, the three requirements for the credit-as-true rule are satisfied. Remanding for the calculation and award of benefits is warranted unless the record as a whole creates "serious doubt" as to whether Escamilla is, in fact, disabled. *See Garrison*, 759 F.3d at 1021. Having reviewed the record, the Court finds that there is serious doubt as to whether Escamilla is disabled.

On the one hand, Escamilla's treating mental health physician describes Escamilla as unable to work a full workday or workweek due to memory loss, lack of concentration, and increased anxiety stemming from workplace procedures and structures. (AR 1076-77, 1233-35.) Dr. Noordeloos further opines that Escamilla

would become anxious and overwhelmed by working a regular job and would, consequently, miss at least four days of work per month. (AR 1235.) Nevertheless, Dr. Noordeloos's treatment notes illustrate that Escamilla's condition is improving, but do not specifically state the degree or amount of improvement, thus creating doubt as to Escamilla's current capacity to work. (AR 1153, 1166, 1177, 1179.) Further, many examining physicians, like Dr. Phillips, Dr. Rodriguez, Dr. Alvarez, and Dr. Addario, found Escamilla to have fewer mental limitations than Dr. Noordeloos found. (AR 32-35.) Examining physician Dr. Addario also cautioned that Escamilla's level of self-reported symptoms could be indicative of exaggeration. (AR 802.) Further, there are medical examination notes from both examining and reviewing physicians indicating that Escamilla's anxiety about his cognitive difficulties may be out of proportion to the degree of his impairments. (AR 94, 97, 801.) As a result, the ALJ also found Escamilla to be only partially credible. (AR 35.) Finally, Escamilla himself never challenged the ALJ's determination that Escamilla's credibility was weakened by his daily activities and the "bulk of the evidence." (AR 34-35.)

Consequently, the totality of the evidence and the ALJ's unchallenged credibility assessment raise "the slightest uncertainty as to the outcome of [the] proceeding." *See Leon v. Berryhill*, 874 F.3d 1130, 1131 (9th Cir. 2017) (alteration in original) (quoting *Treichler*, 775 F.3d 1101). In other words, this evidence creates a serious doubt that Escamilla is, in fact, disabled. Accordingly, the Court will remand for further proceedings.

## VI. CONCLUSION AND ORDER

In light of the foregoing reasons, the ALJ erred in rejecting portions of the opinions of Dr. Noordeloos, Dr. Vandenburgh, and Dr. Davidson. The Court finds that the ALJ failed to provide "specific and legitimate reasons that are supported by substantial evidence" in his decision to reject the opinion of Dr. Noordeloos, Plaintiff's treating physician, in favor of affording more weight to the medical

opinions of non-treating physicians. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)); *Cain v. Barnhart*, 74 Fed. App'x 755, 756 (9th Cir. 2003) (quoting *Lester*, 81 F.3d at 830-31).

The Court also finds that there is a serious doubt that Escamilla is in fact disabled, thus rendering the credit-as-true rule inapplicable. Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 10) and **DENIES** Defendant's Cross-Motion for Summary Judgment (ECF No. 11). Finally, the Court **REMANDS** this action for further proceedings consistent with this order. *See* 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

**DATED: June 14, 2018**

Hon. Cynthia Bashant
United States District Judge

17cv01621